IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 16-36356-H4-11 |
| | § | Case No. 17-30551-H4-11 |
| PIONEER CARRIERS, L.L.C. | § | |
| AND | § | Jointly administered under |
| TRANSPORT DRY FREIGHT, L.L.C., | § | Case No. 16-36356-H4-11 |
| | § | |
| Debtors | § | Chapter 11 |

## DEBTORS' DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION

COME NOW Pioneer Carriers, L.L.C. ("Pioneer") and Transport Dry Freight, L.L.C. ("Transport") (collectively, the "Debtors") and propose this joint Disclosure Statement and Plan of Reorganization (the "Plan") pursuant to §§ 1121 and 1125 of the Bankruptcy Code.

### I.   INFORMATION REGARDING THE DEBTORS

#### A.  The Debtors

The Debtors are two Texas limited liability companies each with their principal place of business at 724 East 19th St., Houston, Texas 77008. Where appropriate, references to the Debtors shall mean the reorganized debtors.

#### B.  Brief History of the Debtors and Cause of the Debtors' Chapter 11 Filings

The Debtors are both wholly owned by Pedro Lagos and, together, they transport crude oil from sites to pipelines through the employment of individuals and independent contractors who operate the Debtors' fleet of trucks and trailers. Although Transport originally started out as a dry freight company, when that industry became unprofitable, Lagos repurposed it to provide support to Pioneer in its oil transportation services. The two companies now operate essentially as one. This plan proposes to substantively consolidate both companies.

In 2016, the general downturn in the oil and gas industry began to affect the Debtors' businesses. By the fall of 2016, the Debtors were experiencing significant cash flow problems. They attempted to refinance their equipment loans through Commercial Credit Group, Inc. and Equify Financial, Inc. Unfortunately, the refinancing was insufficient to resolve the Debtors' cash flow problems. In late 2016 and early 2017, the Debtors filed for bankruptcy protection.

### C.  Assets of the Debtors

The assets of the Debtors at the time of each of their bankruptcy filings are set forth in detail on the Debtors' schedules filed with the Court. The Debtors' principal assets are their fleets of vehicles. Pioneer's fleet is valued at approximately $1,034,000 and Transport's at approximately $176,675. In addition, the Debtors had $69,410 in cash or cash equivalents and approximately $68,000 in receivables less than 90 days old at the time of filing. The Debtors have miscellaneous assets of minor value that are disclosed on their schedules. For more detailed information regarding the Debtors' assets, please see the Debtors' bankruptcy schedules and monthly reports.

### D.  Source of the Information Contained in This Disclosure Statement

All information in this Plan and Disclosure Statement has been submitted by the Debtors unless otherwise indicated.

### E.  Present Condition and Post-Petition Operations of the Debtors

Since filing the bankruptcy case, the Debtors have continued to operate their crude oil transportation business. In the short term, the Debtors' business has improved due to the normal annual cycling of the oil transportation industry. Historically, the oil transportation industry is slow during the winter months and increases during the spring and summer months. In addition, the larger oil and gas industry appears to be recovering generally from its recent downturn and

the Debtors' business is recovering along with it.

The post-petition financial operations of the Debtors are set forth in the monthly operating reports filed with the Bankruptcy Court. Attached as Exhibit A are the two most recent of the Debtors' monthly operating reports, which set forth the Debtors' cumulative post-petition operations.

**F.   Anticipated Future of the Debtors, Management of the Reorganized Debtors, and Feasibility**

Due to the Debtors' identical ownership and cooperative participation in the same business, this Plan proposes to merge Transport into Pioneer. Such merger will reduce the combined administrative burden on the Debtors. Accordingly, following the Effective Date of the Plan, the Debtors will take all such actions as may be necessary or appropriate to effect a merger of Transport into Pioneer, including the filing of a Certificate of Merger with the Secretary of State of the State of Texas. Pioneer will be the sole entity surviving the merger and will assume all assets, debts, rights, and obligations of Transport.

Pedro Lagos will remain the sole owner and manager of Pioneer as the surviving entity and will continue the Debtors' current operations through his management of Pioneer as the surviving entity. The proposed Plan is feasible because the Debtors' cash flow has improved substantially since filing their bankruptcies due to the recent improvement in the oil and gas economy and to post-petition reductions in the Debtors' operating expenses. The merger of Transport into Pioneer is not expected to affect the Debtors' combined operations, other than to reduce the administrative burden of maintaining two entities rather than one. The Debtors therefore believe that their post-merger operations will generate more than sufficient income to fund the proposed bankruptcy plan.

The Debtors' actual income and expenses together with the projections of income and expenses for the next three years are attached hereto as Exhibit B.

### G.  Claims Summary

The Debtors' schedules reflect claims against the Debtors and their respective priorities. The bar date for filing claims against Pioneer was April 24, 2017 and has passed. The bar date for filing claims against Transport is June, 19, 2017 and has passed. The following table summarizes the claims currently filed against the Debtors:

| Claim # | Debtor - Creditor | Amount | Status | Collateral |
|---|---|---|---|---|
| 1 | Harris County et al (Pioneer) | $8,744.23 | Secured | Vehicles located at 724 E. 19th St. Houston, Texas 77008 |
| 2 | Nissan Motor Acceptance Corporation (Pioneer) | $15,389.43 | Secured | 2014 Nissan Sentra |
| 3 | Internal Revenue Service (Pioneer) | $1,109.32 | Priority and General Unsecured | - |
| 4 | Crestview Financial, L.L.C. a/k/a In Advance Capital (Pioneer) | $115,980.35 | Secured | Future receivables and other personal property |
| 5 | Equify Financial, L.L.C. (Pioneer) | $343,939.96 | Secured | Commercial equipment and other personal property |
| 6 | Can Capital Asset Servicing, Inc.  (Pioneer) | $89,772.53 | General Unsecured | - |
| 7 | Santex Truck Center, Ltd. d/b/a Santex Idealease  (Pioneer) | $34,646.36 | General Unsecured | - |
| 8 | Texas Workforce Commission (Pioneer) | $26,100.92 | Priority | - |
| 9 | Airgas USA, L.L.C. (Pioneer) | $954.47 | General Unsecured | - |
| 10 | Commercial Credit Group, Inc. (Pioneer) | $1,466,239.43 | Secured | Vehicles and other personal property |

| 11 | Toyota Motor Credit Corporation d/b/a Lexus Financial Services (Pioneer) | $23,726.62 | Secured | 2014 Lexus ES350 |
|---|---|---|---|---|
| 12 | Allegiance Bank (Pioneer) | $169,982.42 | Secured | 2015 Peterbuilt Model 389 Truck and 2014 Heil Trailer Model |
| 13 | Allegiance Bank (Pioneer) | $65,976.00 | Secured | 2014 Heil Trailer Model |
| 1 | Internal Revenue Service (Transport) | $2,750 | Priority | Heavy tax – unfiled return |
| 2 | Toyota Motor Credit (Transport) | $22,963.78 | Secured | |
| 3 | Equify (Transport) | $348,156.26 | Secured | Tractors |
| 4 | Volvo (Transport) | $123,583.20 | Secured | Tractors |

If a claim is classified by the Debtors as disputed, unliquidated, or contingent, then the creditor must file a proof of claim. If a claim was classified as disputed, unliquidated, or contingent on Schedule F by the Debtors and no proof of claim has been timely filed by the applicable bar date, then no payment will be made to such creditor.

The following table sets forth the secured and priority claims listed by the Debtors in their schedules as undisputed for which proofs of claim have not yet been filed. The Debtors have also scheduled undisputed general unsecured claims which can be viewed on Schedules E/F.

| Creditor | Amount | Status | Collateral |
|---|---|---|---|
| Frio County | $25,000.00 | Secured | Vehicles located in Frio County, Texas |
| Shore Funding Solutions | $100,000.00 | Secured | Receivables |
| TDECU | $45,000.00 | Secured | RV Trailer |

Copies of Schedules D (secured creditors) and E/F (priority and general unsecured creditors) are available from the Clerk of the Court or counsel for the Debtors.

### *Debtors' Objections to Claims*

The following are the currently known objections of the Debtors to claims filed against them. The Debtors reserve the right to object to other claims in the future.

- <u>Harris County et al ("Harris County")</u>. The Debtors will object to the claim of Harris County.  The claim is based on property taxes asserted against personal property allegedly located in Harris County during 2016. In fact, the Debtors had no taxable personal property located in Harris County during 2016. In 2015, Harris County similarly asserted property taxes against the Debtors for personal property located in Harris County, but the Debtors successfully challenged the taxes on the grounds that they had no personal property located in the county.

- <u>Frio County et al ("Frio County")</u>. The Debtors will object to the claim of Frio County.  The claim is based on property taxes asserted against personal property allegedly located in Frio County during 2016. In fact, the Debtors had less taxable personal property located in Frio County during 2016.

- <u>Texas Workforce Commission ("TWC")</u>. The Debtors will object to the claim of TWC. TWC asserts employment taxes against the Debtors for persons who should be classified as independent contractors, not employees. The Debtors assert that they are not liable to pay employment taxes on independent contractors.<u>Internal Revenue Service ("IRS")</u>.  The Debtors may object to the claims of the IRS after filing the tax returns for Transport and after further review of the claim against Pioneer Carriers.

## H.  <u>Liquidation as an Alternative to the Proposed Plan</u>

The Debtors are proposing a Chapter 11 Plan of Reorganization to repay their debts. However, if the Plan is not approved by the creditors and confirmed by the Court, the primary alternative for the Debtors is liquidation under chapter 7 or dismissal of the case.

In a chapter 7 liquidation, it is unlikely that the Debtors' secured and priority creditors

would be paid in full. The Debtors estimate that the total value of their combined assets is $1,355,395. However, the secured and priority claims against the Debtors exceed $2,500,000. Even using the more optimistic valuation of Pioneer's assets set forth in Commercial Credit Group, Inc.'s proof of claim, the total value of the Debtors' combined assets would be only $1,705,585. Because the Debtors' total secured and priority debts outstrip the Debtors' assets, those debts are not likely to be paid in full in a chapter 7 liquidation. As a result, the Debtors' unsecured creditors are unlikely to receive any distribution in a chapter 7 liquidation.

The Plan proposes that all creditors—secured, priority, and unsecured—be paid in full to the extent of their filed and allowed claims. Therefore, creditors will likely be paid more through the Plan than through a chapter 7 liquidation. The Debtors believe that their future income will be sufficient to pay the creditors in accordance with the terms of the proposed Plan.

See Exhibit C for a liquidation analysis.

## I.   Estimated Administrative Expenses

The Debtors estimate administrative expenses, including professional fees and expenses and pre-confirmation U.S. Trustee quarterly fees, for this case to be approximately $65,000. The administrative expenses are composed of attorney fees, U.S. Trustee quarterly fees, and a reserve for other possible administrative expenses.

## J.   Avoidance and Contested Claims

At this time, the Debtors have not identified any preferential transfers or claims that should be disputed.

## K.   Summary of Litigation.

At this time, the Debtors are not aware of any pending or recent litigation with which they are involved.

### L.  Risks Posed to Creditors

The Debtors have one primary client who supplies virtually all of the Debtors' business. Therefore, the Debtors' future successful operation relies on the willingness and ability of this client to continue supplying the Debtors with business. An identifiable risk to creditors is that this client will supply insufficient business to the Debtors for the Debtors to fund the Plan. In addition, the Debtors' history demonstrates that their business is sensitive to cycles in the oil and gas industry. Nevertheless, the Debtors do not foresee any interruption in the supply of business from their primary client and further believe that the reductions in operating expenses they have made since their bankruptcy filings will help them to better survive future downturns in the oil and gas industry.

### M. Tax Ramifications

An analysis of the federal income tax consequences of the Plan to creditors requires a review of the Internal Revenue Code of 1986, as amended, the Treasury regulations promulgated thereunder, judicial authority, and current and administrative rulings and practice. The federal income tax consequences to any particular creditor may be affected by the nature of the taxable entity. There may also be state, local, or foreign tax considerations applicable to each creditor. Each creditor is urged to consult its accountant or tax lawyer to determine the effect of this Plan upon its claim.

### N.  Affiliate Relationships

Both Debtors are owned 100% by Pedro Lagos. Otherwise, the Debtors have no known affiliate relationships. This plan substantively consolidates both Debtors into one entity.

### O.  Absolute Priority Rule

The Bankruptcy Code provides that with respect to each class of creditors, such class

must accept the plan or such class is not impaired under the plan. If a class does not accept the plan, then the bankruptcy court may confirm a plan over the failure of a class to vote for the plan, provided that for a class of unsecured claims, the plan must provide that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of the claim of the creditor, or the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

Stated in another way, the Bankruptcy Code provides that Pedro Lagos, as the sole owner of the Debtors, may not retain his ownership of the Debtors unless (i) the holders of all unsecured claims are paid in full with the present value of their claims; or (ii) all classes of unsecured claims vote to accept the proposed plan. The Debtors believe that they are paying all holders in full with the present value of their claims. If the Debtors fail to prevail on this issue, the Plan cannot be confirmed.

The Debtors believe that their plan of reorganization complies with the absolute priority rule in the Bankruptcy Code that is contained in Section 1129(b). The Debtors are proposing to pay the total amount of each allowed claim in full.

### P.  Definitions

"Effective Date" shall be the date that is fifteen (15) days after a final and non-appealed order is entered confirming the Debtors' chapter 11 plan of reorganization.

## II.    PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS

**Plan Concept.** The Debtors' Plan is reorganizing in nature. It provides for the division of claims into fifteen (15) classes. Each of the claims in each class shall be treated in the manners and methods described below:

<u>Class 1. Administrative Claims as of the Effective Date</u>

Class 1 consists of the Allowed Claims entitled to priority under § 507(a)(1) of the Bankruptcy Code, including fees for services rendered and expenses incurred through the Effective Date by Debtors' counsel and other professionals appointed by the Court for the Debtors, the U.S. Trustee's pre-confirmation quarterly fees, and any other administrative expenses.

The estimated amount of claims in Class 1, including professional fees and U.S. Trustee fees is approximately $7,000 per month. Except as provided below, each creditor in Class 1 shall be paid in cash on the Effective Date if the creditor's claim has matured or been approved or allowed by the Court, if such approval or allowance is required. Fees and expenses for counsel for the Debtors will be paid at an agreed amount after confirmation

The budget projects payments of approximately $2,500 per month to counsel for the Debtors until the fees and expenses are paid. If Counsel and the Debtors are in agreement as to the amounts to be paid for the legal fees and expenses, Counsel for the Debtors has agreed to accept payments over a period of time in lieu of payment at confirmation. If counsel for the Debtors is paid over a period of time as stated above, the Debtors will execute a promissory note to counsel with interest at a rate of six percent (6%) per annum.

All fees for services rendered and expenses incurred after the Effective Date by court-appointed counsel and other professionals for the Debtors shall be paid by the Debtors in the ordinary course of business without the necessity of filing fee applications or seeking approval or allowance of the Court. The reorganized Debtors shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

Quarterly fees owed to the U.S. Trustee pre-confirmation will be paid on the Effective Date of the Plan. After confirmation and until this case is closed by the Court, the reorganized

Debtors shall pay quarterly fees to the U.S. Trustee as they accrue and serve on the U.S. Trustee a quarterly financial statement or affidavit of quarterly disbursements.

The payments to Baker & Associates will start on the fifth day of the first full calendar month following the Effective Date of the Plan.

Class 2. Priority Claims of the Internal Revenue Service

Class 2 consists of the priority claim of the Internal Revenue Service (the "IRS"). The IRS has filed a proof of claim against Pioneer in the amount of $1,109.32, of which $1,055.93 is entitled to priority. The IRS has filed a proof of claim against Transport in the amount of $2,750.00, all of which is entitled to priority. The total priority claim of the IRS against the Debtors is $3,805.93 (

The Debtors will pay the principal amount of $3,805.93 to the IRS at 3% interest in 72 monthly payments. The general unsecured amount of $53.39 will be treated as though it were a separate claim in Class 15, containing general unsecured creditors.

Payments to Class 2 will start on the fifth day of the first full calendar month following the Effective Date of the Plan.

Class 2 is impaired.

Class 3. Secured Claim of Nissan Motor Acceptance Corporation

Class 3 consists of the secured claim of Nissan Motor Acceptance Corporation ("Nissan"). Nissan has filed a proof of claim for this debt in the amount of $15,389.43. The claim is secured by a 2014 Nissan Sentra.   The vehicle is valued at $12,000.

The Debtors will pay the principal amount of $12,000 to Nissan at 5% interest in 60 monthly payments.

Payments to Class 3 will start on the fifth day of the first full calendar month following

the Effective Date of the Plan.

Class 3 is impaired.

<u>Class 4. Secured Claim of Crestview Financial, L.L.C.</u>

Class 4 consists of the secured claim of Crestview Financial L.L.C. a/k/a In Advance Capital ("Crestview"). Crestview has filed a proof of claim for this debt in the amount of $115,980.35. Crestview's claim is secured by the accounts, receivables, equipment, inventory, and miscellaneous other personal property of the Debtors. A detailed description of the collateral securing this debt is available in Crestview's proof of claim. The Debtors believe that this debt is the same as the debt owed to Procredit (listed on Schedule D of the Debtors' bankruptcy schedules) and that Crestview purchased this debt from Procredit or a successor-in-interest of Procredit. The Debtors have determined that the value of the collateral is not sufficient to classify this claim as a secured claim. The claim of Crestview shall be treated as an unsecured claim and paid in accordance with the provisions for payment of unsecured claims.

Class 4 is impaired.

<u>Class 5. Secured Claim of Equify Financial, L.L.C.</u>

Class 5 consists of the secured claim of Equify Financial, L.L.C. ("Equify") filed in the Pioneer Carriers case (Claim No. 5) in the amount of $343,939.96, of which $267,500.00 is secured. Equify's claim is secured by seven vehicles (four tank trailers and three truck tractors) and by miscellaneous personal property of the Debtors, including accounts receivable, deposit accounts, inventory, and equipment. A detailed description of the collateral securing this debt is available in Equify's proof of claim.

Equify filed a secured claim in the Transport Dry Freight case (Claim No. 3) in the amount of $348,156.26, over which $267,500 is secured.

The vehicles and trailers are the same in both the Pioneer Carriers and Transport Dry Freight cases.

At a hearing on April 11, 2017, the Debtors and Equify reached an agreement regarding the pre-confirmation treatment of Equify's claim.

Beginning on May 15, 2017 and on the 1st day of each month thereafter (starting June 1, 2017) until confirmation of a Chapter 11 Plan, the Debtors shall pay to Equify the amount of $3,500.00 as adequate protection against Equify's loss of interest in the collateral (the "Protection Payments"). The payments shall be for both Pioneer Carriers and Transport Dry Freight.

- The Protection Payments will be applied to the principal amounts owed by the Debtors to Equify.

- The secured claim of $267,500.00 shall be paid in equal monthly payments at 5.25% per annum interest over a period of 84 months or less starting after the Effective Date. Interest will start accruing after the Effective Date.

- The unsecured portion of the claims in both the Pioneer Carriers case and the Transport Dry Freight case shall be treated as unsecured claims. The unsecured amount shall be only one amount and not the amounts from both cases.

Class 5 is impaired.

Class 6. Commercial Credit Group, Inc.

Class 6 consists of the secured claim of Commercial Credit Group, Inc. ("CCG"). CCG has filed a proof of claim in the amount of $1,466,239.43. CCG's claim is secured by seven trucks; twenty tank trailers; and miscellaneous personal property of the Debtors, including accounts, accounts receivable, inventory, and equipment. A detailed description of the collateral securing this debt is available in CCG's proof of claim filed with the Bankruptcy Court.

On March 10, 2017, the Court entered an Agreed Order on the Motion of Commercial Credit Group Inc. for Relief from the Automatic Stay as to Five Mack Trucks, Two Freightliner Trucks, and Twenty Crude Oil Trucks (the "CCG Agreed Order"). [Doc. No. 76]. The CCG Agreed Order provides for the treatment of CCG's claim. This Plan incorporates the CCG Agreed Order and will treat CCG's claim as described therein.

In summary, the Debtors will pay interest at 5.25% on the amounts owed to CCG. In addition, the Debtors will make the following payments to CCG:

- monthly payments in the amount of $15,000 per month continuing on the 6th day of each month thereafter through February 6, 2018;

- two monthly payments in the amount of $20,000 per month, commencing on March 6, 2018 and continuing through April 6, 2018;

- forty-one monthly payments in the amount of $35,000 per month, commencing on May 6, 2018 and continuing on the 6th day of each month thereafter through September 6, 2021; and

- one final payment on October 6, 2021 in the amount of any then remaining unpaid balance of the debt owed to CCG.

More detailed information regarding the treatment of CCG's claim may be found in the CCG Agreed Order filed with the Bankruptcy Court. To the extent that any conflict exists between the CCG Agreed Order and the above summary of the treatment of CCG's claim, the language of the CCG Agreed Order will prevail.

If the Reorganized Debtor is unable to make the required payments, the Reorganized Debtor may elect to surrender the collateral to CCG in satisfaction of the remaining obligations

to CCG.

Class 6 is impaired.

Class 7. Secured Claim of Toyota Motor Credit Corporation

Class 7 consists of the secured claim of Toyota Motor Credit Corporation d/b/a Lexus Financial Services ("Toyota"). Toyota has filed a proof of claim in the amount of $23,726.62. Toyota's claim is secured by a 2014 Lexus ES350.

The Debtors will pay the principal amount of $23,726.62 to Toyota at 2.49% interest in 60 monthly payments starting after the Effective Date.  Any amounts previously paid to Toyota shall be applied to reduce this amount.

Payments to Class 7 will start on the fifth day of the first full calendar month following the Effective Date of the Plan.

Class 7 is impaired.

Class 8. Secured Claims of Allegiance Bank

Class 8 consists of the secured claims of Allegiance Bank ("Allegiance"). Allegiance has filed two proofs of claim in the amounts of $169,982.42 and $65,976.00 respectively, for a total secured claim of $235,958.42. Allegiance's claims are secured by a 2015 Peterbilt Model 389 Truck and a 2014 Heil Trailer.

The Debtors will pay the principal amount of $246,379.25 to Allegiance at 5.25% interest in 84 approximately equal monthly payments. Payments to Class 8 will start on the fifth day of the first full calendar month following the Effective Date of the Plan.

Class 8 is impaired.

Class 9. Secured Claim of Frio County

Class 9 consists of the secured claim of Frio County. Frio County has not yet filed a proof

of claim with the Bankruptcy Court. Pioneer has scheduled the claim of Frio County in the amount of $25,000. The claim is for ad valorem taxes secured by equipment of the Debtors located in Frio County.   The Debtor believes the claim should be approximately $10,000 due to less property being located and used in Frio County and intends to object to the claim.

The Debtors will pay the principal amount of $27,071.42 to Frio County at 12% interest in 72 monthly payments.

Payments to Class 9 will start on the fifth day of the first full calendar month following the Effective Date of the Plan.

Class 9 is impaired.

Class 10. Shore Funding Solutions

Class 10 consists of the secured claims of Shore Funding Solutions ("Shore Funding"). Shore Funding has not filed a proof of claim with the Bankruptcy Court. Pioneer has scheduled two claims belonging to Shore Funding, each in the amount of $50,000. Shore Funding's claims are secured by the Debtors' receivables. The Debtors have determined that the value of the collateral is not sufficient to classify this claim as a secured claim. The claim of Shore Funding shall be treated as an unsecured claim and paid in accordance with the provisions for payment of unsecured claims.

Class 10 is impaired.

Class 11. Secured Claim of TDECU

Class 11 consists of the secured claim of TDECU. TDECU has not filed a proof of claim with the Bankruptcy Court. Pioneer has scheduled the claim of TDECU in the amount of $45,000.00, of which $35,000.00 is secured. TDECU's claim is secured by an RV trailer.

The Debtors will pay the secured amount of $35,000.00 to TDECU at 3.5% interest in 84.

The unsecured amount of $10,000.00 will be treated as an unsecured claim with the general unsecured creditors.

Payments to Class 11 will start on the fifth day of the first full calendar month following the Effective Date of the Plan.

Class 11 is impaired.

Class 12. Secured Claim of Volvo Financial Services

Class 12 consists of the secured claim of Volvo Financial Services ("Volvo"). Volvo has not yet filed a proof of claim with the Bankruptcy Court. Transport has scheduled the claim of Volvo in the amount of $128,782.00, of which $105,000 is secured. Volvo's claim is secured by trucks and equipment owned by Transport.

The Debtors will pay the secured amount of $105,000.00 to Volvo at 3.5% interest in 84 monthly payments. The unsecured amount of $23,782.00 will be treated as an unsecured claim with the general unsecured creditors.

Payments to Class 12 will start on the fifth day of the first full calendar month following the Effective Date of the Plan.

Class 12 is impaired.

Class 13. Secured Claim of Harris County et al

Class 13 consists of the secured claim of Harris County et al ("Harris County"). Harris County has filed a proof of claim in the amount of $8,744.23. Harris County's claim is allegedly secured by vehicles located at 724 E. 19th St., Houston, Texas 77008. However, the Debtors assert that no vehicles were located at this location, or in Harris County generally, during the time period to which the alleged property taxes relate. The Debtors will object to the claim of Harris County.

If the claim of Harris County is allowed, the Debtors will pay the allowed amount of the claim to Harris County at 12% interest in 72 monthly payments.

Payments to Class 13 will start on the fifth day of the first full calendar month following the Effective Date of the Plan.

Class 13 is impaired.

Class 14. Priority Claim of the Texas Workforce Commission

Class 14 consists of the priority claim of the Texas Workforce Commission (the "TWC"). The TWC has filed a proof of claim in the amount of $26,100.92, all of which, if allowed, is entitled to priority. However, the Debtors assert that they do not owe unemployment taxes to the TWC because the persons to which the taxes relate are properly classified as independent contractors, not employees. The Debtors will object to the claim of the TWC.

If the TWC's claim is allowed, the Debtors will pay the allowed amount of the claim to the TWC at 3% interest in 72 monthly payments.

Payments to Class 14 will start on the fifth day of the first full calendar month following the Effective Date of the Plan.

Class 14 is impaired.

Class 15. General Unsecured Claims

Class 15 consists of all unpaid, pre-petition, allowed, unsecured, non-priority claims against the Debtors. Based on the Debtors' schedules and the proofs of claim currently filed with the Bankruptcy Court, the Debtors estimate that the total amount of claims in this class—including the unsecured and non-priority portions of the claims of secured and priority creditors—is $423,370.

The Debtors will pay a total of 100% on these claims. Each May 1st, beginning on the

first May 1st to arrive after the Effective Date of the Plan, the Debtors will send the creditors in Class 15 the year-end financial statements of Pioneer and Transport for the previous calendar year. After payment of all ordinary and necessary expenses and after payment to Classes 1 through 14 as described above, the creditors in Class 15 will receive 50% of Pioneer and Transport's combined net cash flow, if any, after payments to secured and priority creditors in the previous calendar year (the "50% Net Cash Flow").

Each year until the Class 15 Creditors have been paid in full, the 50% Net Cash Flow will be distributed to the creditors in Class 15 in quarterly pro-rata payments. The first such payment will take place on the June 30th following distribution of the year-end financial statements. The remaining payments will take place on the following September 15th, December 15th, and March 15th of each year until the Class 15 Creditors have been paid in full.

The Debtors will continue distributing the year-end financial statements and quarterly payments of 50% Net Cash Flow (if any) to the creditors in Class 15 until these creditors are paid in full. The Debtors anticipate that once creditors in other classes have been paid in full, the amounts to be paid to the Class 15 Creditors will increase as a result of the net cash flow increasing.

Any failure of the Debtors to timely distribute the year-end financial statements or the quarterly payments of 50% Net Cash Flow shall constitute an event of default under the Plan as to the Class 15 creditors. In the event of such default, any creditor affected by the default may send a notice of the default to the Debtors. If the default is not cured within thirty (30) days of the date of the notice, the affected creditor may proceed to collect all amounts owed under state law without further notice and without recourse to the Bankruptcy Court.

If more than five years are required to pay 100% of the Class 15 claims, the Class 15

creditors will receive interest at 3% after five (5) years. Beginning on the fifth day of the 61st full calendar month following the Effective Date of the Plan, interest will be added to the unpaid portion of the Class 15 claims and the Class 15 creditors will earn interest on their claims going forward until the claims are paid in full.

Any recovery on claims or causes of action asserted by the Debtors after confirmation shall be used to determine net cash flow and to pay creditors in Class 15.

Class 15 is impaired.

<u>**ACCEPTANCE OR REJECTION OF PLAN**</u>

Each impaired class of Claims shall be entitled to vote separately to accept or reject this Plan unless that class receives no distribution under the Plan. Any class receiving no distribution is deemed to have rejected the Plan. Any unimpaired class of Claims shall not be entitled to vote either to accept or to reject this Plan and is deemed to have accepted the Plan. Each creditor should read this Plan and Disclosure Statement, then complete and return the attached ballot.

Your acceptance of the Plan is important. In order for the Plan to be deemed "accepted" by Creditors and holders of interests, at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting and fifty-one percent (51%) in number of Allowed Claims voting in each Class of Claims must accept the Plan. Whether or not you expect to be present at the hearing, you are urged to fill in, date, sign, and properly mail the Ballot for Accepting or Rejecting Plan of Reorganization to Mr. Reese W. Baker, Attorney for Debtor, 5151 Katy Freeway, Ste 200, Houston, Texas 77007.

**IF ANY CLASS REJECTS THE PLAN, THE DEBTOR MAY SEEK TO "CRAMDOWN" THE CONFIRMATION OF THE PLAN PURSUANT TO 11 U.S.C. §1129(b). THE BANKRUPTCY CODE ALLOWS THE DEBTORS TO REQUEST THE COURT TO CONFIRM THE PLAN NOTWITHSTANDING THE REJECTION OF**

ANY CLASS OR CLASSES OF CREDITORS IF THE DEBTORS CAN DEMON-
STRATE THAT (i) THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AND (ii) THE
PLAN IS FAIR AND EQUITABLE WITH RESPECT TO EACH CLASS OF CLAIMS
OR INTERESTS THAT IS IMPAIRED AND HAS NOT ACCEPTED THE PLAN. IN
ORDER TO "CRAMDOWN" THE PLAN, THE DEBTORS WILL HAVE TO DEMON-
STRATE TO THE BANKRUPTCY COURT AT A HEARING THAT THESE TWO
STANDARDS HAVE BEEN SATISFIED. SUCH HEARING WOULD BE PART OF THE
CONFIRMATION HEARING ON THE PLAN AND ALL CREDITORS MAY BE PRE-
SENT AND WOULD HAVE AN OPPORTUNITY TO PARTICIPATE IN SUCH HEAR-
ING.

## EXECUTORY CONTRACTS

Upon confirmation of this Plan, the Debtors shall be deemed to have assumed the follow-
ing executory contracts:

1. A real estate lease for trucks and equipment with Dilly Location.

2. A master service agreement with Trafigura in Pleasanton, Texas.

3. An independent contractor agreement between the two Debtors.

4. An employee payments contract between the two Debtors.

All other executory contracts and leases are deemed rejected by the Debtors as of the Ef-
fective Date.

## JURISDICTION OF THE BANKRUPTCY COURT

The Bankruptcy Court shall retain exclusive jurisdiction of the case after the Confirma-
tion Date with respect to the parties to, and the subject matter of, this Plan and the Claims, appli-
cations, orders, damages, and other events as described in the Plan.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §1129(a) or (b) of the

Code. These include the following requirements: the Plan must be proposed in good faith; at least one impaired class of claims must accept the Plan, without counting the votes of insiders; the Plan must distribute to each creditor at least as much as the creditor would receive in a chapter 7 liquidation case, unless the creditor votes to accept the Plan; and the Plan must be feasible. These requirements are *not* the only requirements listed in §1129, and they are not the only requirements for confirmation.

## A.  Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor has a right to vote for or against the Plan only if that creditor has a claim that is both (1) allowed or allowed for voting purposes; and (2) impaired.

In this case, the Debtors believe that Classes 2 through 15 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

### 1. What Is an Allowed Claim?

Only a creditor with an allowed claim has the right to vote on the Plan. Generally, a claim is allowed if either (1) the debtor has scheduled the claim on the debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim. When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim against Pioneer was April 24, 2017. The deadline

for filing a proof of claim against Transport was June 19, 2017.

### 2. What Is an Impaired Claim?

As noted above, the holder of an allowed secured claim has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in §1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### 3. Who is **Not** Entitled to Vote?

The holders of the following types of claims are *not* entitled to vote:

- holders of claims that have been disallowed by an order of the Court;
- holders of other claims that are not "allowed claims" (as discussed above), unless they have been "allowed" for voting purposes;
- holders of claims in unimpaired classes;
- holders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code;
- holders of claims in classes that do not receive or retain any value under the Plan; and
- administrative expenses.

***Even if you are not entitled to vote on the Plan, you may have a right to object to the confirmation of the Plan.***

### 4. Who Can Vote in More Than One Class?

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise holds claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### B.  Votes Necessary to Confirm Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to

be confirmed by "cram down" on non-accepting classes.

### 1. Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

### 2. Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by §1129(b) of the Code, including the "absolute priority rule." Under the absolute priority rule, the Court may confirm the Plan over the failure of a class to vote for the Plan provided that for a class of unsecured claims, the Plan must provide that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the Effective Date of the Plan, equal to the allowed amount of the claim of the creditor, or the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property. The Debtors believe that the Plan complies with the absolute priority rule in the Code.

A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cram down" confirmation will affect your***

*claim, as the variations on this general rule are numerous and complex.*

## EFFECT OF CONFIRMATION

As provided for in Section 1141 of the Bankruptcy Code, the provisions of the Debtors' Plan shall bind the Debtors and any creditor under the Plan, whether or not the claim of the creditor is impaired under the Plan and whether or not the creditor has accepted the Plan. As provided for in Section 1141(b) of the Bankruptcy Code, confirmation of the Debtors' Plan vests all of the property of the estate in the Debtors. After confirmation of the Debtors' Plan, all property of the Debtors dealt with by the Plan (which includes all property of the Debtors) is free and clear of all liens, claims, and interests of creditors and equity security holders, except to the extent provided in this Plan.

The rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all claims of any nature whatsoever occurring on or prior to the confirmation date, including any interest accrued thereon from and after the petition date, against the Debtors and Debtors-in-Possession, or any of their assets or properties. Except as otherwise provided herein, upon the payment of the amounts provided in this Plan, in accordance with Section 1141 of the Code, all such claims against the Debtors and Debtors-in-Possession shall be satisfied, discharged, and released in full. Except as otherwise provided herein, all creditors shall be precluded from asserting against the Debtors any other or further claim based upon any act or omission, transaction, or other activity of any kind or nature occurring on or prior to the confirmation date.

## DISPUTED CLAIMS; OBJECTIONS TO CLAIMS

The Debtors may file an objection to any disputed Claim within sixty (60) days from the Effective Date of the Plan. Objections not filed within the foregoing time period shall be deemed waived, except to the extent that the grounds for the objection could not have been discovered

prior to the expiration of the sixty (60) day time period. If an objection is filed to any claim, payments on the claim will not begin until after an Order of the Court allowing the claim has become final.

SUBSTANTIVE CONSOLIDATION OF DEBTORS

Upon or immediately after the Effective Date, the Debtors will take all such actions as may be necessary or appropriate to effect a merger of Transport into Pioneer, including the filing of a Certificate of Merger with the Secretary of State of the State of Texas. Pioneer will be the sole entity surviving the merger and will assume all assets, debts, rights, and obligations of Transport.  Pedro Lagos will remain the sole owner and manager of Pioneer as the surviving entity and will continue the Debtors' current operations through his management of Pioneer as the surviving entity.

**FEASIBILITY TO PERFORM AND IMPLEMENTATION OF THE PLAN**

The Debtors believe that the proposed plan is feasible. Since filing the bankruptcy case, the Debtors' cash flow has improved significantly, due in part to the normal annual business cycling of the oil transportation industry. Historically, the oil transportation industry is slow during the winter months and increases during the spring and summer months. In addition, the oil and gas industry appears to be recovering generally from its recent downturn and the Debtors' business is recovering along with it. The Debtors believe that their primary client will be able to supply them with enough business to fund the proposed plan. Finally, the merger of Transport into Pioneer will reduce the combined administrative burden of the Debtors without compromise to the Debtors' operations. The projections attached as Exhibit B demonstrate the feasibility of the plan.

## FINANCIAL INFORMATION FILED WITH THE COURT

A.    Statements of Financial Affairs (Pioneer and Transport)

B.    Schedules A through H, and Summary of Schedules (Pioneer and Transport)

C.    Monthly Operating Reports (Pioneer and Transport)

PLEASE BE ADVISED THAT THE FINANCIAL INFORMATION ENUMERATED IN SUBPARAGRAPHS A THROUGH C ABOVE IS AVAILABLE IN THE CLERK'S OFFICE OF THE UNITED STATES BANKRUPTCY COURT, 515 RUSK, HOUSTON, TEXAS.

## EXHIBITS

**A.    Monthly Operating Reports for the two months prior to the date of this Plan**

**B.    Revenue projections and payments for three (3) years following the Effective Date.**

**C.    Liquidation analysis under Chapter 7**

Dated: July 21, 2017

Pioneer Carriers, L.L.C.

By:  ___/s/ Pedro Lagos_____
      Pedro Lagos,
      Managing Member of
      Pioneer Carriers, L.L.C.


Transport Dry Freight, L.L.C.

By:  ___/s/ Pedro Lagos_____
      Pedro Lagos,
      Managing Member of
      Transport Dry Freight, L.L.C.


ATTORNEY FOR THE DEBTORS:

*/s/ Reese Baker*
Reese Baker
TX Bar No. 01587700
Baker & Associates
5151 Katy Freeway, #200
Houston, Texas 77007
(713) 869-9200
(713) 869-9100 Fax


        Counsel for the Debtors has made no independent
        investigation of the information contained herein.