

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
02/08/2018

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **PIONEER CARRIERS, LLC AND** | § | **Case No. 16-36356** |
| **TRANSPORT DRY FREIGHT, LLC,** | § | |
| | § | |
| Debtors. | § | **Chapter 11** |
| | § | |

## MEMORANDUM OPINION ON WHETHER AN UNDERSECURED CREDITOR WHO ELECTS THE APPLICATION OF 11 U.S.C. § 1111(b) IS ENTITLED TO POST-PETITION ATTORNEYS' FEES AS PART OF ITS SECURED CLAIM
### [Doc. Nos. 175 & 176]

### I.   INTRODUCTION

This memorandum opinion concerns whether an undersecured creditor who elects the application of § 1111(b) is entitled to its post-petition attorneys' fees as part of its secured claim.[1]  Pioneer Carriers LLC, the Debtor in this Chapter 11 case (the "Debtor"), asserts that the creditor is not so entitled because § 506(b) only allows post-petition attorneys' fees if a creditor is oversecured.  The undersecured creditor, Equify Financial, LLC ("Equify"), contends that it is so entitled because: (1) its post-petition attorneys' fees are an allowed claim under § 502(b); and (2) § 1111(b)(2) sets forth that Equify holds a secured claim "to the extent that such claim is allowed."  For the reasons set forth herein, this Court agrees with Equify and will therefore require the Debtor to treat this fee amount as part of Equify's secured claim under the pending proposed plan of reorganization.

The findings of fact and conclusions of law set forth herein are made pursuant to Federal Bankruptcy Rules 7052 and 9014.  To the extent that any finding of fact is construed as a

---

[1] Any reference herein to a section is a reference to the specific section of the Bankruptcy Code, unless otherwise denoted.  Further, any reference herein to "the Code" is a reference to the Bankruptcy Code, which is set forth in 11 U.S.C.

conclusion of law, it is adopted as such; and, to the extent that any conclusion of law is construed as a finding of fact, it is adopted as such.  The Court reserves the right to make additional findings and conclusions as the parties may request or as this Court deems appropriate.

## II.   FINDINGS OF FACT

1.  On October 25, 2016, Equify extended financing to the Debtor.  To evidence this loan, the Debtor executed a promissory note in the original principal amount of $389,268.93 (the "Note").  [Claim Reg. No. 5].  The Note is secured by virtually all of the Debtor's non-real property assets, including, but not limited to, accounts receivable, inventory, and equipment (the "Collateral").  [*Id.*].  The security interest held by Equify is evidenced by a security agreement executed by the Debtor on October 25, 2016 (the "Security Agreement"), as well as by a UCC-1 financing statement and several certificates of title (which perfect the lien on certain vehicles owned by the Debtor).  [*Id.*].

2.  The second paragraph of the Note, in relevant part, contains the following language: "Maker, all endorsers, guarantors and any other party liable on this Note also promise and agree to pay Holder's costs, expenses, and reasonable attorneys' fees incurred in enforcing and/or collecting this Note." [*Id.*].

3.  Paragraph 8 of the Security Agreement, in relevant part, contains the following language: "If any Event of Default exists, . . . (b) Secured Party may require Debtor to pay all . . . reasonable attorneys' fees . . . ."

4.  On December 12, 2016, the Debtor filed a Chapter 11 petition (the "Petition Date"). [Doc. No. 1].

5.  On January 27, 2017, Equify timely filed its original proof of claim, to which the Note and Security Agreement, among other documents, are attached. [Claims Reg., Claim No.

5].  In this original proof of claim, Equify asserted that the amount of its claim was $343,939.96, which represented the sum of outstanding principal and accrued unpaid interest (excluding post-petition attorneys' fees) as of the Petition Date.  [*Id.*].  Further, Equify asserted that it held a bifurcated claim, with its secured claim being $267,500.00 (i.e., the value of the Collateral) and its unsecured claim being $76,439.96 (i.e., the difference between the total amount of the claim and the value of the Collateral).  [*Id.*]. The Debtor does not dispute the debt that it owes to Equify. [Doc. No. 37, p. 13 of 36].

6.  On July 21, 2017, the Debtor filed its disclosure statement and plan of reorganization (the "Original Plan").  [Doc. No. 131].  The Original Plan designated Equify's secured claim to be in Class 5 and expressly set forth that the amount of Equify's secured claim was $267,500.00, which represented the value of the Collateral. [*Id.* at p. 12 of 28].  The Original Plan also designated Equify's unsecured claim of $76,439.96 to be in Class 15 along with other general unsecured claims. [*Id.* at p. 13, 18–20 of 28].

7.  On August 16, 2017, Equify timely filed its Notice of Election Under 11 U.S.C. § 1111(b).[2]  [Doc. No. 136].  In this Notice, Equify set forth that "[b]y making such election, Equify's total claim must be treated as a single secured claim for purposes of plan confirmation.  Accordingly, Equify's Class 5 allowed secured claim shall be in the amount of $348,156.26 and must be treated as a fully secured claim." [*Id.*].

8.  Additionally, on August 16, 2017, Equify timely filed an objection to the Original Plan. [Doc. No. 137].  This objection set forth several reasons as to why Equify objected to the

---

[2] Federal Bankruptcy Rule 3014 sets forth, in relevant part, the following: "An election of application of § 1111(b)(2) of the Code by a class of secured creditors in a chapter 9 or 11 case may be made at any time prior to the conclusion of the hearing on the disclosure statement or within such later time as the court may fix."  In the case at bar, at the time that Equify filed its Notice of Election Under 11 U.S.C. § 1111(b), this Court had not yet even begun the hearing on the Debtor's disclosure statement.  Therefore, there is no question that Equify's filing of its Notice was timely.

Original Plan. One of them was that "[o]n account of Equify's § 1111(b) election, its Class 5 allowed secured claim must be increased to the full amount of Equify's allowed claim." [*Id.* at p. 3 of 5]. Stated differently, Equify objected to the Original Plan because it failed to treat Equify's Class 5 allowed secured claim as being in the amount of $348,156.26.

9. On November 6, 2017, the Debtor filed an amended disclosure statement and an amended plan. [Doc. No. 173].

10. On the morning of November 8, 2017, the Debtor filed its second amended disclosure statement and second amended plan (the "Second Amended Plan"). [Doc. No. 175]. The Second Amended Plan is presently the pending plan that is up for confirmation before this Court. The Second Amended Plan expressly recognizes that Equify has made the election under § 1111(b), and therefore, unlike the Original Plan, sets forth that the Class 5 secured claim is $348,156.26 rather than $267,500.00. [*Id.* at p. 15 of 40]. Moreover, the Second Amended Plan, because of Equify's election, changed the treatment of Equify's Class 5 claim from the treatment given to this class in the Original Plan. The Second Amended Plan increases the monthly amount of the 84 monthly payments to be made during the life of the plan, and also provides for a balloon payment. [*Id.*].

11. Additionally, on November 8, 2017, approximately one hour after the Debtor filed the Second Amended Plan, Equify filed an objection thereto. [Doc. No. 176]. This objection sets forth several reasons as to why Equify objects to the Second Amended Plan. One of them is that the Second Amended Plan:

> [P]rovides for payment of Equify's Class 5 secured claim in the amount of $348,156.26, but does not provide for payment of Equify's post-petition attorneys' fees, which to date total $19,839.50. Equify is entitled to compensation for its post-petition attorneys' fees pursuant to 11 USC 502(b). Accordingly, the Plan needs to make provision for payment in full of Equify's secured claim in the amount of $348,156.26, plus post-petition attorneys' fees in the amount of $19,839.50.

[*Id.* at p. 3 of 6]. Thus, Equify objects to the Second Amended Plan because the Debtor has refused to include Equify's post-petition attorneys' fees as part of Equify's Class 5 secured claim. Equify contends that its Class 5 secured claim is not $348,156.26, but rather $367,995.76, which represents the sum of outstanding principal and accrued unpaid interest plus post-petition attorneys' fees.

12. At 2:00 PM on November 8, 2017, this Court began the confirmation hearing on the Second Amended Plan, and the Debtor adduced testimony in support of its plan. At this hearing, Equify's counsel made oral argument about why Equify is entitled to its post-petition attorneys' fees as part of its Class 5 secured claim, and the Debtor's counsel made oral argument in opposition thereto. The Court then took the matter under advisement, and also continued the confirmation hearing.

13. On December 5, 2017, prior to the continued confirmation hearing, Equify amended its proof of claim to expressly set forth that in the wake of Equify having made the § 1111(b) election, its claim is entirely secured and includes post-petition attorneys' fees. [Claim Reg. No. 5, as amended]. Specifically, the amended proof of claim sets forth that the amount of the claim is $364,741.96 and that "[t]his amount includes the contract

balance of $343,939.96 as of the petition date plus $20,802.00 of post-petition attorneys' fees." [*Id.*].[3]

14. On December 6, 2017, the Court held the continued confirmation hearing and the Debtor introduced further evidence in support of the Second Amended Plan. The Court also issued an oral ruling that Equify is entitled to its post-petition attorneys' fees as part of its Class 5 secured claim under the Second Amended Plan, and then set a hearing for January 30, 2018 to determine the exact amount of these fees. Finally, the Court continued the confirmation hearing until February 23, 2018, so that additional evidence regarding feasibility in support of the Second Amended Plan could be introduced and so that the exact amount of Equify's Class 5 secured claim would be known by this date.[4]

### III.   CONCLUSIONS OF LAW

#### A.  Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas,

---

[3] The record is unclear as to why Equify set forth in its amended proof of claim that the outstanding amount of principal and accrued unpaid interest is $343,939.96 rather than the figure of $348,156.26 (i.e., the figure set forth in the objection filed on November 8, 2017). [*See* Finding of Fact No. 11]. The Court surmises that the reduction is due to adequate protection payments that Equify received from the Debtor.

[4] This Court did indeed hold a hearing on January 30, 2018, at which time Equify introduced evidence about its post-petition attorneys' fees. The Debtor objected to these fees. After listening to the testimony, reviewing exhibits, and considering oral argument of counsel for both Equify and the Debtor, this Court entered an order awarding Equify post-petition attorneys' fees in the amount of $19,287.50. [Doc. No. 214].

General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts.

The dispute at bar is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) because its resolution affects the administration of the Debtor's Chapter 11 bankruptcy estate. Further, it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) because its resolution necessarily involves the plan confirmation process associated with the Second Amended Plan: namely, whether this plan must treat Equify's post-petition attorneys' fees as part of Equify's Class 5 secured claim. This dispute is also a core proceeding under 28 U.S.C. § 157(b)(2)(O) because whether Equify is entitled to post-petition attorneys' fees as part of its Class 5 secured claim will necessarily adjust the relationship between the Debtor and its creditors. Finally, this dispute is a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under §157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (citation omitted); *de Montaigu v. Ginther (In re Ginther Trusts)*, No. 06-3556, 2006 WL 3805670, at *19 (S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance").

Venue is proper pursuant to 28 U.S.C. § 1408(1) because the Debtor's principal place of business and principal assets were located in the Southern District of Texas for the 180 days preceding the Petition Date.

In the wake of the Supreme Court's issuance of *Stern v. Marshall*, 564 U.S. 462 (2011), this Court is required to determine whether it has the constitutional authority to enter a final

order in any matter brought before it. In *Stern*, which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 503. As already noted above, the pending matter before this Court is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L), and (O). Because *Stern* is replete with language emphasizing that the ruling is limited to the one specific type of core proceeding involved in that dispute, this Court concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order here. Core proceedings under 28 U.S.C. §§ 157(b)(2)(A), (L), and (O) are entirely different than a core proceeding under 28 U.S.C. § 157(b)(2)(C). *See, e.g., Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547–48 (B.A.P. 8th Cir. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *Tanguy v. West (In re Davis)*, 538 F. App'x 440, 443 (5th Cir. 2013) *cert. denied sub nom. Tanguy v. West.*, 134 S. Ct. 1002 (2014) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect.' . . . We decline to extend *Stern*'s limited holding herein.") (citation omitted).

Alternatively, even if *Stern* applies to all of the categories of core proceedings brought under 28 U.S.C. § 157(b)(2), *see First Nat'l Bank v. Crescent Elec. Supply Co. (In re Renaissance Hosp. Grand Prairie Inc.)*, 713 F.3d 285, 294 n.12 (5th Cir. 2013) ("*Stern*'s 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial

8

Branch posed by Section 157(b)(2) . . . ."), this Court still concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order in the dispute at bar. In *Stern*, the debtor filed a counterclaim based *solely* on state law; whereas, here, this dispute (whether Equify is entitled to its post-petition attorneys' fees as part of its Class 5 secured claim) is governed not solely by state law, but rather primarily by express provisions of the Code (i.e., § 502(b) and § 1111(b)) as well as judicially-created law from federal courts about the appropriate interpretation and application of these provisions. For these reasons, the Court concludes that it has the constitutional authority to enter a final order that the Second Amended Plan must treat Equify's post-petition attorneys' fees as part of Equify's Class 5 secured claim.

Finally, in the alternative, this Court has the constitutional authority to enter a final order because the parties have consented to adjudication of this matter by this Court. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947 (2015) ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . ."). Indeed, the Debtor and Equify participated at the hearings on the Second Amended Plan held on November 8, 2017, and December 6, 2017, and also participated at the hearing held on January 30, 2018, to determine the amount of Equify's post-petition attorneys' fees [Finding of Fact Nos. 12 & 14]; and at no time did the Debtor or Equify ever object to this Court's constitutional authority to enter a final order on Equify's request to include its post-petition attorneys' fees as part of its secured claim. If these circumstances do not constitute consent, nothing does.

For all of the reasons set forth above, this Court concludes that it has constitutional authority to enter a final order that the Second Amended Plan must include Equify's post-petition

attorneys' fees as part of Equify's Class 5 secured claim.

### B.  Equify Has an Allowed Claim for Its Post-Petition Attorneys' Fees

Under 11 U.S.C. § 1111(b)(2), if a creditor elects the application of § 1111(b) then, notwithstanding § 506(a),  that creditor holds a "secured claim to the extent that such a claim is allowed."  In the case at bar, the Debtor does not dispute that Equify has timely made the election under § 1111(b).  [*See* Finding of Fact No. 7].  Indeed, after Equify made the election, the Debtor filed the Second Amended Plan and changed the amount of Equify's Class 5 secured claim from $267,500.00 (the amount of the secured claim in the Original Plan, which was determined by the value of the Collateral as set forth in Equify's proof of claim) to $348,156.26 (i.e., the entire amount of principal and interest owed under the Note).  [Finding of Fact Nos. 5, 6, 7, 10, & 11].  Stated differently, the Debtor acknowledges that Equify's election under § 1111(b) means that Equify has a fully secured claim for all of the principal and interest owed under the Note even though the value of the Collateral is less than the sum of the principal and interest.  [Finding of Fact Nos. 5, 10, & 11].  However, the Second Amended Plan's treatment of Equify's Class 5 secured claim does **not** include Equify's post-petition attorneys' fees.  [Finding of Fact No. 11].  The Debtor's position is that Equify's invocation of § 1111(b) does not entitle Equify to include its post-petition attorneys' fees as part of its Class 5 claim under the Second Amended Plan.  According to the Debtor, the **only** circumstance under which a creditor can receive post-petition attorneys' fees is when, pursuant to § 506(b), the value of the creditor's collateral exceeds the amount of principal and accrued unpaid interest.  And, here, there is no dispute that the value of the Collateral (i.e., $267,500.00) is less than the amount of the unpaid principal and accrued interest due under the Note (i.e., $343,939.96).  [Finding of Fact No. 5].

Equify disagrees with the Debtor's argument.  Equify's position is that when § 1111(b) and § 502(b) are read together, its secured claim includes all of the attorneys' fees expressly

provided for under the Note and the Security Agreement—including its **post-petition fees**. [*See* Finding of Fact Nos. 2 & 3]. Thus, the issue now before this Court is whether a creditor can ever recover its post-petition attorneys' fees outside the context of being an oversecured creditor under § 506(b)?

The courts are split on this issue. Some have held that only an oversecured creditor can have a claim for post-petition attorneys' fees. Others have held that a creditor does not need to be oversecured to have a claim for post-petition attorneys' fees; indeed, they have held that an unsecured creditor—regardless of whether it is undersecured or entirely unsecured—can have a claim for post-petition attorneys' fees. There are four key arguments that these courts have discussed in making their respective rulings: (1) whether § 506(b) disallows such claims; (2) whether § 502(b) allows such claims; (3) whether *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365 (1988), prohibits the allowance of such claims; and (4) whether public policy favors disallowing such claims. *SNTL Corp. v. Centre Ins. Co. (In re SNTL Corp.),* 571 F.3d 826, 840–41 (9th Cir. 2009). This Court now addresses each of these arguments.

  1.  The Section 506(b) Argument

In *Travelers*, the Supreme Court held that an unsecured claim for post-petition attorneys' fees based on a pre-petition contract that is enforceable under substantive, non-bankruptcy law must be allowed unless "the claim implicates any of the nine exceptions enumerated in § 502(b)." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 448–50 (2007). However, in *Travelers*, despite the debtor's urging, the Supreme Court expressly declined to decide whether § 506(b) disallows claims for attorneys' fees to the extent that the

creditor is either undersecured or completely unsecured. *Id.* at 454–55.[5] In addition, the Fifth

Circuit has declined to resolve this precise issue, but rather remanded the issue to the bankruptcy

court to decide. *Wells Fargo Bank, N.A. v. 804 Congress L.L.C. (In re 804 Congress, L.L.C.),*

756 F.3d 368, 380 (5th Cir. 2014). Nevertheless, other courts have weighed in on this issue.

One line of cases holds that § 506(b) disallows post-petition attorneys' fees for all

creditors except oversecured creditors. *See, e.g., In re Elec. Mach. Enters., Inc.*, 371 B.R. 549,

554 (Bankr. M.D. Fla. 2007); *In re Auge*, 559 B.R. 223, 229 (Bankr. D. N.M. 2016); *In re

Faison*, 574 B.R. 63, 71 (Bankr E.D.N.C. 2017), *aff'd sub nom. Summitbridge Nat'l Invs., v.

Faison*, No. 5:17-cv-384-BO, 2017 WL 5714111 (E.D.N.C. Nov. 27, 2017). In *Electric

Machinery*, the court held that an unsecured creditor is not entitled to post-petition attorneys'

fees based on the plain language of § 506(b). 371 B.R. at 550–51. Section 506(b) provides, in

relevant part, that "to the extent that an allowed secured claim is secured by property the value of

which . . . is greater than the amount of such claim, there shall be allowed to the holder of such

claim, interest on such claim, and any reasonable fees, costs, or charges." 11 U.S.C. § 506(b).

The court reasoned that the words "to the extent" a claim is oversecured and "there shall be

allowed" interest and reasonable fees compel the negative implication that, in any other

circumstances, post-petition attorneys' fees are not allowed. *Elec. Mach. Enters., Inc.*, 371 B.R.

at 550–51. Further, the court stated that "if Congress intended for unsecured creditors to receive

post-petition attorneys' fees, then it would have done so explicitly by authorizing unsecured

creditors to collect fees under section 506(b)." *Id.* at 551; *see also In re Faison*, 574 B.R. at 70

("If attorneys' fees were allowable on the unsecured portion of a debt, there would be no need

---

[5] The Supreme Court refused to address the debtor's argument that § 506(b) categorically disallows attorneys' fees for undersecured creditors or completely unsecured creditors because the debtor had failed to raise this issue before the lower courts. *Travelers*, 549 U.S. at 454–55.

for [§ 506(b)].  If Congress had intended for the holders of both secured claims and unsecured claims to recover attorneys' fees, it could have easily said so.  But it did not.") (citation omitted).

However, another line of cases has found this argument unpersuasive and rejects the proposition that § 506(b) precludes post-petition attorneys' fees for all creditors except oversecured creditors.  *See, e.g., In re SNTL Corp.*, 571 F.3d at 841–43; *Ogle v. Fid. Dep. Co. of Maryland*, 586 F.3d 143, 147–49 (2nd Cir. 2009); *In re 804 Congress, L.L.C.*, 529 B.R. 213, 226–31 (Bankr. W.D. Tex. 2015).  As the Fifth Circuit noted in *In re 804 Congress, L.L.C.*, "[s]everal courts have concluded that § 506(b) deals with the priority of secured claims, not allowance of claims."  756 F.3d at 378 (citing several cases for this proposition).

For example, in *Welzel v. Advocate Realty Invc., L.L.C. (In re Welzel)*, 275 F.3d 1308, 1317 (11th Cir. 2001), the Eleventh Circuit stated the following:

> The title of § 506, "Determination of secured status," indicates that the section is more narrow in focus than § 502.  That is, the title shows that § 506 deals with whether a claim is secured or not, as opposed to the larger question of whether the claim is allowed or disallowed, as addressed by § 502.

*See also Qmect, Inc., v. Burlingame Capital Partners II, L.P. (In re Qmect, Inc.)*, 368 B.R. 882, 884–85 (Bankr. N.D. Cal. 2007).  In addition, in *In re SNTL Corp.*, the Ninth Circuit, in holding that a totally unsecured creditor had an allowed claim for post-petition attorneys' fees, stated that:

> [T]he allowance functions of section 506(b) and 502(b) have been incorrectly conflated.  Section 502(b), which applies to claims generally, does disallow unmatured interest (see 11 U.S.C. § 502(b)(2)); it does not specifically disallow attorneys' fees of creditors or certain other charges.  Section 506(b), on the other hand, specifies what may be included in a secured claim.

571 F.3d at 842; *see also Ogle*, 586 F.3d at 148 ("Accordingly, we hold that section 506(b) does not implicate unsecured claims for post-petition attorneys' fees, and it therefore interposes no bar to recovery."); *UPS Captial Bus. Credit v. Gencarelli (In re Gencarelli)*, 501 F.3d 1, 5 (1st Cir. 2007)

13

("There is universal agreement that whereas section 506 furnishes a series of useful rules for determining whether and to what extent a claim is secured . . . it does not answer the materially different question of whether the claim itself should be allowed or disallowed.").

Thus, for these courts, § 502 addresses the allowance or disallowance of all claims in general—including claims for attorneys' fees—whereas § 506 only addresses the topic of oversecured claims. *In re 804 Congress, L.L.C.*, 529 B.R. at 226. "[W]here Congress intended to provide an exception to the general allowance provisions of section 502, it did so expressly in section 502(b), and section 506 is not one of the exceptions listed in section 502(b)." *Id.* (citing *In re SNTL Corp.*, 571 F.3d at 842–43). Indeed, as the bankruptcy court in *In re 804 Congress, L.L.C.* noted, the Supreme Court in *Travelers* looked to § 502 to determine whether an unsecured creditor's claim for post-petition attorneys' fees was allowed. 529 B.R. at 227. The bankruptcy court emphasized that the Supreme Court held that that claim was allowed under the Code because: (1) the claim was enforceable under nonbankruptcy law (i.e., there was a written contract providing for attorneys' fees); and (2) none of the enumerated exceptions in § 502(b) applied. *Id.*

This Court agrees with the reasoning of those courts who look solely to § 502 to determine if post-petition attorneys' fees constitute an allowed claim. The plain language of the statute makes it clear that § 506 determines the status of a secured claim and "[i]t does not say or imply that disallowance as a secured claim under section 506 constitutes disallowance under section 502." *In re 804 Congress, L.L.C.*, 529 B.R. at 226. Thus, § 506(b) does not prohibit the recovery of post-petition attorneys' fees for all creditors except oversecured creditors, and courts should look to § 502 to determine whether a claim for such fees made by an undersecured creditor or a wholly unsecured creditor is allowed.

2.  Allowance of Post-petition Attorneys' Fees Under Section 502

Some debtors and courts have argued that a post-petition claim for attorneys' fees is disallowed under § 502(b) because it directs the court to "determine the amount of such claim . . . *as of the date of the filing of the petition.*" *See In re Elec. Mach. Enters. Inc.*, 371 B.R. at 551 (emphasis in original). Thus, according to this argument, attorneys' fees that accrue post-petition cannot be allowed because such claims cannot be determined or calculated as of the petition date.

However, this reasoning is inconsistent with the Code's broad definition of "claim." *See* § 101(5)(A). A "claim" includes any right to payment, whether or not that right is liquidated or contingent. *Id*; *In re SNTL Corp.*, 571 F. 3d at 838, 843. If a claim for post-petition attorneys' fees is based on a prepetition agreement, then it is a contingent right to payment that arose prepetition. *In re SNTL Corp.*, 571 F.3d at 843; *In re New Power Co.*, 313 B.R. 496, 508 (Bankr. N.D. Ga. 2004). "That the debt was contingent and unliquidated on the petition date does not take it out of the definition of 'claim' under section 101(5), and certainly does not prevent it from being allowed under section 502." *In re 804 Congress, L.L.C.*, 529 B.R. at 228–29; *see also In re SNTL Corp.*, 571 F.3d at 843. In fact, § 502(c) contemplates the estimation (during the pendency of the case) of "any contingent or unliquidated claim" existing as of the petition date. *In re 804 Congress, L.L.C.*, 529 B.R at 229.

Further, in *Travelers*, the Supreme Court held that post-petition attorneys' fees provided for in a pre-petition contract must be allowed under § 502 unless one of the exceptions enumerated in § 502(b)(1)–(9) disallows such a claim. 549 U.S. at 448–53; *see also Ogle*, 586 F.3d at 146–47 (2d Cir. 2009) (holding "an unsecured claim for post-petition fees, authorized by a valid pre-petition contract, is allowable under section 502(b) and is deemed to have arisen pre-

petition"). And, a review of § 502(b) indicates that it does not bar post-petition attorneys' fees incurred by unsecured creditors from constituting an allowed claim. That is why the Supreme Court held that the attorneys' fees in *Travelers* were allowed under § 502 even though they accrued post-petition. 549 U.S. at 449–454.

Therefore, § 502 does not bar attorneys' fees just because they have accrued post-petition. Rather, under § 502(b), post-petition attorneys' fees are allowed because none of the enumerated exceptions in § 502(b)(1)–(9) disallows such a claim.

### 3. The *Timbers* Argument

Another argument against allowing post-petition attorneys' fees to all but oversecured creditors relies on the Supreme Court's opinion in *Timbers*. In *Timbers*, the Supreme Court held that § 506(b) "permits postpetition interest to be paid only out of the 'security cushion,' the undersecured creditor, who has no such cushion, falls within the general rule disallowing postpetition interest." 484 U.S. at 372–73. The argument is that § 506(b) has the similar effect of denying post-petition attorneys' fees.

However, this argument fails to recognize that under § 502(b)(2), a claim for unmatured interest is expressly disallowed; whereas, there is no provision in § 502(b) expressly prohibiting attorneys' fees (either pre-petition or post-petition) owed to a creditor. In fact, the Supreme Court's decision in *Timbers* strengthens the case for the allowance of post-petition attorneys' fees under § 502. *See In re 804 Congress, L.L.C.*, 529 B.R. at 230. In *Timbers*, the Supreme Court looked to § 502 to determine whether a claim for unsecured post-petition interest was allowed. 484 U.S. at 372–373. The only situation where post-petition interest can be paid is when there is an equity cushion under § 506(b). Otherwise, a claim for post-petition interest is expressly disallowed under § 502(b)(2). *Ogle*, 586 F.3d at 148 (distinguishing *Timbers* and

finding that § 506(b) creates a limited exception for oversecured creditors from the general rule of § 502(b)(2)). In contrast, § 502(b) contains no express prohibition of a creditor's post-petition attorneys' fees. *Id.* (noting that § 502(b) "does not similarly bar (or even reference) claims for post-petition attorneys' fees"). Therefore, *Timbers* does not prohibit a claim for post-petition attorneys' fees outside the context of being an oversecured creditor. If anything, *Timbers* reinforces the argument that courts should look to § 502 to determine whether a claim for a creditor's post-petition attorneys' fees is allowed.

    4. Public Policy

Finally, some courts cite public policy and equity as reasons to disallow post-petition attorneys' fees. These courts argue that the main policy goal of the Code is to "secure equality among the creditors of a bankrupt" and that allowing post-petition attorneys' fees to unsecured creditors based on pre-petition contractual obligations would give these creditors an advantage over other unsecured creditors who have no such contracts, such as tort creditors. *In re Elec. Mach. Enters., Inc.*, 371. B.R. at 551–52 (citation omitted).

Several courts have rejected this argument. *See In re 804 Congress L.L.C.*, 529 B.R. at 230–31; *In re SNTL, Corp.*, 571 F.3d at 845; *In re Qmect*, 368 B.R. at 885–86. The court in *Qmect* stated that another policy goal of the Code is "the preservation of nonbankruptcy legal rights except to the extent necessary to facilitate the purpose of the bankruptcy proceeding." 368 B.R. at 886. In addition, the court in *Qmect* also noted that it would be "highly inequitable" and against public policy for the debtor's estate to recover fees incurred post-petition while a creditor is denied such recovery. *Id.* Moreover, courts have found that an inquiry into policy and equity is unnecessary because the Code provides the answer in the plain language of § 502 and § 506. *In re 804 Congress L.L.C.*, 529 B.R. at 230; *In re SNTL Corp.*, 571 F.3d at 845. "In the end, it is

the province of Congress to correct statutory dysfunctions and to resolve difficult policy questions embedded in the statute." *In re SNTL Corp.*, 571 F.3d at 845. This Court agrees with these counterarguments.

In sum, after considering all the major arguments articulated by the courts who have issued rulings on the issue, this Court accepts as more persuasive the line of cases holding that an unsecured creditor can, under the right circumstances, have an allowed claim for post-petition attorneys' fees. In the case at bar, such circumstances exist. First, as of the Petition Date, Equify was an unsecured creditor in that it was holding an undisputed bifurcated claim, as the value of the Collateral was less than the amount of the total debt owed to Equify. [Finding of Fact No. 5]. Second, the claim asserted by Equify is based upon pre-petition agreements—the Note and the Security Agreement—that contain express provisions allowing Equify to recover its reasonable attorneys' fees. [Finding of Fact Nos. 2 & 3]. These agreements are enforceable under Texas law. Tex. Civ. Prac. & Rem. Code § 38.001(8); *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017) ("[A] party may not recover attorney's fees unless authorized by statute or contract.") (citation omitted); *Mohican Oil & Gas, LLC v. Scorpion Expl. & Prod.*, 337 S.W.3d 310, 321 (Tex. App—Corpus Christi 2011, pet. denied) ("Parties are free to contract for a fee-recovery standard either looser or stricter than the fee-recovery standards provided by statute, and courts are bound by the parties' choice."). Thus, to use the Supreme Court's language: "[U]nder the terms of the current Bankruptcy Code it remains true that an otherwise enforceable contract allocating attorney's fees (*i.e.*, one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." *Travelers*, 549 U.S. at 1203–04. And here, there is no Code provision that provides otherwise; as already discussed above, § 506(b) does **not** bar Equify's claim for post-petition attorneys' fees

even though Equify is not an oversecured creditor. Equify therefore holds—at a minimum—an allowed **unsecured** claim for post-petition attorneys' fees. The question now is whether this claim automatically becomes a **secured** claim by virtue of Equify's election of the application of § 1111(b)(2).

### C. Equify's Allowed Claim for Its Attorneys' Fees, Rather Than Being an Allowed Unsecured Claim, is an Allowed Secured Claim

Many of the cases discussed in Section III addressed arguments concerning whether totally unsecured creditors are entitled to unsecured claims for post-petition attorneys' fees under § 502. None of them involved an undersecured creditor who made the election under § 1111(b)(2) and then argued that it was entitled to a secured claim for its post-petition attorneys' fees. In the case at bar, Equify relies upon § 502 to establish that it is entitled to a claim for post-petition attorneys' fees just as the courts in *SNTL Corp.* and *Ogle* held that the unsecured creditors there were entitled to post-petition attorneys' fees. Having established that it does have an allowed unsecured claim for its post-petition attorneys' fees, Equify next contends that by making the § 1111(b)(2) election, its unsecured claim for these fees becomes a secured claim based upon the express language of this provision—namely, that "such claim is a secured claim to the extent that such claim is allowed." 11 U.S.C. § 1111(b)(2).

Equify has provided this Court with one published opinion involving an undersecured creditor who sought to establish a secured claim for post-petition attorneys' fees after making the § 1111(b)(2) election: *In re Castillo*, 488 B.R. 441 (Bankr. C.D. Cal. 2013). The undersigned judge has found no other opinions squarely on point. In *Castillo*, the bankruptcy court first held that the creditor had an allowed unsecured claim for post-petition attorneys' fees based upon § 502, and then held that the invocation of the § 1111(b) election changed the claim from an allowed unsecured claim to an allowed secured claim. 488 B.R. at 448. The *Castillo* court ruled

in this manner based upon the express language of § 1111(b)(2), which—to reiterate—states, in pertinent part, that "such claim is a secured claim to the extent that such claim is allowed." *Id.* This Court finds the reasoning in *Castillo* persuasive and adopts it in the case at bar.  Because Equify has timely made the § 1111(b) election, its allowed unsecured claim for post-petition attorneys' fees has automatically become a secured claim.  Therefore, the Second Amended Plan must treat the amount of Equify's post-petition attorneys' fees (totaling $19,287.50) as part of Equify's Class 5 secured claim.

## IV.   CONCLUSION

The knee-jerk reaction of many practicing bankruptcy attorneys is that a creditor cannot recover its post-petition attorneys' fees unless it is oversecured.  And, there are certainly numerous bankruptcy judges who agree with this postition.  Indeed, the judge in *Castillo* apparently used to be in this camp, as she admitted that she "reached a result that the court itself considers novel and surprising." *Id.* at 445.  Yet, the very language of §§ 502 and 506(b), plus certain cases cited herein interpreting these sections, convince the undersigned judge that: (1) an undersecured creditor can indeed have an allowed unsecured claim for post-petition attorneys' fees; and (2) when this creditor makes the § 1111(b)(2) election, this claim becomes an allowed secured claim.  For these reasons, Equify holds an allowed secured claim for its post-petition attorneys' fees.

An order consistent with this memorandum opinion will be entered on the docket simultaneously herewith.

Signed on this 8th day of February, 2018.

Jeff Bohm
United States Bankruptcy Judge